## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| **MAGNOLIA PADS, LTD.,** | |
| **Petitioner,** | Civ. No. _____ |
| **against** | |
| **NUVEEN GLOBAL INVESTMENTS LLC and USCIF COMMERCE 35W LLC** | **PETITION TO COMPEL ARBITRATION** |
| **Respondents.** | |

Magnolia Pads, Ltd. ("Magnolia"), by and through its attorneys, Baker Botts, L.L.P., files its Petition to Compel Arbitration against Nuveen Global Investments, LLC ("Nuveen") and USCIF Commerce 35W LLC ("USCIF" and, together with Nuveen, "Purchaser"), and alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### I.    BACKGROUND

1.      This is a petition to compel arbitration pursuant to, and as required by, an agreement for the sale, purchase, and construction of property in Fort Worth, Texas.  The arbitration would concern: (a) determination as to the resolution and scope of various items that need to be completed in order to achieve Substantial Completion, as defined in that agreement, and (b) the interpretation of a provision regarding the definition of "Open Items."

2.      Magnolia seeks an order from this court under the Federal Arbitration Act (9 U.S.C. § 4) compelling Purchaser to arbitrate a dispute among the parties in accordance with the terms of that certain Agreement of Sale and Purchase between Magnolia Pads, Ltd. as Seller and Nuveen Global Investments, LLC as Purchaser pertaining to 2700 Keller Haslet Road Fort Worth, TX

76177 dated October 18, 2021 ("Purchase Agreement").  Attached as Exhibit 1 is a true and correct copy of the Purchase Agreement between the parties and its exhibits.  Capitalized terms used in this Petition bear the same meaning as in the Purchase Agreement.

## II.    PARTIES

3.    Magnolia is a single purpose entity created to hold and develop real estate.  It is a Texas limited partnership and maintains its principal place of business in Houston, Texas. Magnolia is deemed a citizen of the State of Texas for diversity jurisdiction purposes.

4.    Upon information and belief, Nuveen is a global real estate investment firm formed as a Delaware limited liability company. Upon information and belief, Nuveen is a global real estate investment firm formed as a Delaware limited liability company.  Upon information and belief, Nuveen's ultimate parent is the Teachers Insurance and Annuity Association of America (TIAA), which is owned by a Board of Governors with responsibility for managing its affairs, and based on the residencies of those Governors, TIAA is deemed a citizen of the States of Pennsylvania, Illinois, Maryland, Connecticut, and/or the District of Columbia for diversity jurisdiction purposes.

5.    Upon information and belief, USCIF is a single purpose entity to hold real estate formed as a Delaware limited liability company.  Upon information and belief, USCIF has the same ultimate parent as Nuveen and is therefore deemed a citizen of the States of Pennsylvania, Illinois, Maryland, Connecticut, and/or the District of Columbia for diversity jurisdiction purposes.

### III.     JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1), in that this is a civil action between citizens of Texas and a citizen of Delaware and Illinois, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.     Venue is proper in this judicial district because, pursuant to Section 18.8 of the Agreement, the parties agreed that any action in connection with the Purchase Agreement "shall be brought and maintained in the state or federal courts" seated in the city of Fort Worth and Tarrant County, Texas, where the property at the center of this dispute is located.  Purchase Agreement § 18.8.  The parties have "consent[ed] and agree[d] to the jurisdiction" of this court. *Id*.  Venue is also proper in this judicial district because, pursuant to 9 U.S.C. § 4, a party should bring a petition to compel arbitration in the District where the parties agreed to arbitrate any disputes between them.  The parties agreed to arbitrate in Fort Worth, Texas disputes regarding Open Items, and the parties' dispute regarding Open Items is the primary subject of the present matter.  *See* Purchase Agreement § 9.8; Exhibit L to Purchase Agreement, § 1(a).

### IV.     STATEMENT OF FACTS

8.     On October 18, 2021, Magnolia and Nuveen entered into an agreement for the sale and purchase of property under the Purchase Agreement's terms.  *See* Purchase Agreement, 1.

9.     Pursuant to the Purchase Agreement, Magnolia agreed to sell, and Nuveen agreed to purchase, Magnolia's rights, title, and interest in certain property located at 2700 Keller Haslet Road Fort Worth, TX 76177 (the "Real Property") together with the Improvements and other related property interests (the "Property").  *Id.*

10.     Magnolia entered into a construction contract with MYCON General Contractors, Inc. ("General Contractor") pursuant to which General Contractor was required to construct the

Buildings on the Real Property (the "General Contractor's Agreement") substantially in accordance with the Plans and Specifications. *See id*. § 9.1*; Id.* at Exhibit H (Plans and Specifications).

11.    Effective February 10, 2022, Nuveen assigned its rights, title, and interest under the Purchase Agreement in the Property to USCIF pursuant to an Assignment of Agreement of Sale and Purchase (the "Assignment").  In the Assignment, USCIF agreed to assume Nuveen's rights and obligations under the Purchase Agreement, but Nuveen agreed to remain primarily liable under the Purchase Agreement.

12.    Magnolia contends that it has achieved Substantial Completion of the Buildings in accordance with the Purchase Agreement.  Purchaser has claimed, in writing and orally, that there are defects or problems with the floor slabs and/or subgrade work in respect of the Buildings, or alternatively, that there are defects or deficiency in the testing reports for the subgrade work in respect of the Buildings, that result in Substantial Completion not being achieved or Seller being unable to demonstrate that Substantial Completion has been achieved, giving Purchaser the right not to close on the purchase of the Property.

13.    As of the filing date of this Petition, the parties have not yet closed the transaction.

***The Relevant Contractual Provisions***

14.    Pursuant to Section 9.4 of the Purchase Agreement, there are Construction Conditions to Closing that include achievement of Substantial Completion.  *See* Purchase Agreement § 9.4(a).

15.    Among other obligations, Magnolia must provide Purchaser with a Substantial Completion Notice, Certificates of Substantial Completion, a Certificate of Occupancy for each Building and copies of lien releases. *See id*. § 9.4(a)(iii).

16.    Upon delivery of the Substantial Completion Notice and the required supporting documents, Nuveen will have "ten (10) Business Days thereafter … to inspect the applicable Building[s] and confirm by written notice … whether Substantial Completion has been achieved," or otherwise timely provide Magnolia with a Non-Compliance Notice specifying to Purchaser the basis for objecting to Seller's determination and identifying what Purchaser "believes needs to be completed in order to achieve Substantial Completion."  *See id*. § 9.4(b).

17.    If Purchaser timely delivers a Non-Compliance Notice, Magnolia and Purchaser must meet to negotiate the "items and scope of items" necessary for Substantial Completion (the "Open Items"). *Id*.

18.    Magnolia is to continue with completion of the Open Items until it again believes Substantial Completion has been achieved and submits a new Substantial Completion Notice, thereby restarting the above-described process, which must be repeated until Substantial Competition is achieved.  *Id*.

19.    Purchaser cannot "include any disagreements with [Magnolia's] determination in any subsequent Non-Compliance Notices that were not raised in its initial Non-Compliance Notice, and any such items shall be deemed waived by [Nuveen]."  *Id*.

20.    Substantial Completion can be achieved even if there are "Punchlist" items that have not yet been completed.  *See id.* § 9.4(a)(i).  Such Punchlist items are excepted from the requirements related to the completion of work on Open Items prior to Substantial Completion.  *Id*.

*__Dispute Regarding the Number and Scope of Items Needed for Substantial Completion__*

21.     Magnolia submitted a Substantial Completion Notice, dated November 3, 2022, and required supporting items and materials, that complied with the requirements of Section 9.4(a)(iii) of the Purchase Agreement.

22.     Purchaser provided Magnolia with a Non-Compliance Notice on November 18, 2022.    In that Non-Compliance Notice, Purchaser denied that Substantial Completion had occurred and listed various items that Purchaser claimed still needed to be completed.

23.     Following the completion of additional work on items identified by Purchaser in its November 18 Non-Compliance Notice, Magnolia submitted a second Substantial Completion Notice on December 1, 2022, together with required supporting materials, pursuant to Section 9.4 of the Purchase Agreement.

24.     Following its receipt of the second Substantial Completion Notice, Purchaser submitted a new Non-Compliance Notice and a "Notice of Potential Default", both dated December 15, 2022.

25.     In its Second Non-Compliance Notice, Purchaser stated that a number of the same items listed in its initial Non-Compliance Notice still needed to be completed in accordance with the Project's Plans and Specifications.  However, Purchaser also added new items and expanded the scope and amount of tasks needed on certain other items that had previously been narrowly-articulated in Purchaser's original Non-Compliance Notice.

26.     In its Notice of Potential Default, Purchaser alleged that it had "notified Seller of substantial issues regarding the construction of the flooring slabs at the Project," that "Seller has failed to remedy the defective work, precluding Seller from achieving the Project's Substantial Completion," and that "the results of inspection, testing and reports indicate that Seller failed to

ensure the Project was constructed in accordance with the Plans and Specifications." Seller disagrees with these allegations, for which Purchaser failed to provide support at the time it submitted its Notice.

27.     Magnolia notified Purchaser on December 12, 2022 that Purchaser did not have the right to raise objections not raised in Purchaser's initial November 18 Non-Compliance Notice and that, in any event, there was no basis for objecting to the floor slabs. Magnolia provided letters from Seller's structural engineer, Seller's geotechnical engineer and a third-party consultant, Structural Services, Inc., in support of Seller's position regarding the floor slabs.

28.     Since December 15, 2022, Purchaser has continued to articulate additional items that entitle Purchaser not to close on the purchase of the Property, including complaints about support for the building slabs, the testing of the subgrade of the Buildings during construction, and the accuracy of various testing and other reports provided to Purchaser by Seller, all of which relate to whether Substantial Completion has been achieved.

29.     Magnolia sent to Seller an updated response to Purchaser's December 15 Notice of Non-Compliance on December 22, 2022 that stated on an item-by-item basis—and provided back-up support for such statements—that nearly all of the items raised in the December 15 Notice of Non-Compliance had been completed other than the allegations of defects or deficiencies regarding the floor slabs, as to which Magnolia contends there is no defect or deficiency.

30.     Magnolia contends that Purchaser violated the requirements of Section 9.4(b) of the Agreement by adding new items to its original Open Items list and expanding the scope of items that previously were not included in Purchaser's initial Non-Compliance Notice. Accordingly, Magnolia contends that Purchaser's newly raised items and expanded Open Items were waived pursuant to Section 9.4(b) of the Agreement.

31.    However, Purchaser contends that the items were sufficiently raised in its initial Non-Compliance Notice or qualify as "defaults or breaches" of the Purchase Agreement, so that items had *not* in fact been waived and that Substantial Completion has not occurred.

32.    Purchaser also made oral statements raising questions as to whether Purchaser believes its claims are subject to the arbitration provision in the Purchase Agreement.

### *Dispute Regarding Interpretation of "Open Items"*

33.    Further, correspondence between the parties evinced that the parties also disagree on the proper interpretation of Section 9.4(a)(i) of the Purchase Agreement.

34.    Magnolia and Purchaser disagree with regard to what type of item qualifies as a "Punchlist" item that need not be remedied before Substantial Completion can be achieved.

35.    Section 9.4(a)(i) of the Purchase Agreement reads in relevant part:

> The work described in the General Contractor's Agreement shall be Substantially Complete in accordance with the General Contractor's Agreement ***exclusive of minor completion and punchlist items*** (collectively constituting the "Punchlist") … provided, however, that any outstanding items ***shall not constitute Punchlist items, Substantial Completion shall not be deemed to have occurred*** and this condition shall not be deemed satisfied in the event the list of outstanding items cost more than ***One Hundred and Fifty Thousand and 00/100 ($150,000.00)*** collectively for any Building ***and*** take no longer than sixty (60) days to complete, such cost to be calculated by the General Contractor in a manner reasonably acceptable to Seller and Purchaser….

Ex. 1, Agreement § 9.4(a)(i) (emphasis added).

36.    Purchaser has contended in its November 18 Non-Compliance Notice that Section 9.4(a)(i) of the Purchase Agreement to mean that if the items aggregate over $150,000, they are not Punchlist items, or if they aggregate $150,000 or less but take longer than 60 days to complete, they are not Punchlist items.

37.    Conversely, Magnolia reads Section 9.4(a)(i) of the Agreement to mean that the $150,000 test is per Building, not in the aggregate, and that items that aggregate over $150,000 per Building may still be Punchlist items if the items will take less than 60 days to complete.

38.    Magnolia estimates that if there are any Open Items remaining, the cost to complete them is less than $150,000 (both per Building and in the aggregate) and that the remaining items will take less than 60 days to complete.  Therefore, it contends that such items, if any such items remain, are Punchlist items and that Substantial Completion has occurred and all conditions to closing the purchase are satisfied.

39.    Any dispute as to these matters, including whether Substantial Completion has occurred, must be resolved through arbitration under the terms of the Purchase Agreement.

## V.    CAUSES OF ACTION

### COUNT ONE (Compel Arbitration under the Federal Arbitration Act)

40.    Magnolia repeats and realleges paragraphs 1 through 39 hereof, as if fully set forth within.

41.    The parties are bound by a mandatory arbitration provision in the Purchase Agreement.  *See* Purchase Agreement § 9.8.

42.    Section 9.8 of the Purchase Agreement provides that if Magnolia and Purchaser are unable to agree that the Open Items are resolved, then the parties must arbitrate in accordance with Exhibit L to the Purchase Agreement.  That provision reads:

> If Seller and Purchaser are unable to agree that the Open Items are resolved, each acting in good faith and acting reasonably, then the parties shall submit the decision to mandatory arbitration in accordance with **Exhibit L** attached hereto which shall be final and binding on Seller and Purchaser. Each of Seller and Purchaser waives the right to commence an action in connection with the Open Items in any court and expressly agrees to be bound by the decision of the arbitrator determined in **Exhibit L.** The waiver of this Section 9.8 will not prevent Seller or Purchaser from commencing an action in any court for the sole purposes of enforcing the obligation

of the other party to submit to binding arbitration or the enforcement of an award granted by arbitration herein permitted by **Exhibit L** hereto.

Ex. 1, Purchase Agreement § 9.8 (emphasis in original).

43.     Further, the parties agreed in Exhibit L of the Purchase Agreement that:

Any dispute among Seller and Purchaser as to the interpretation of any provision of this Agreement with respect to the Open Items or the rights and obligations of any party hereunder with respect to the Open Items shall be resolved through binding arbitration as hereinafter provided in Fort Worth, Texas.

*Id.* at Purchase Agreement Ex. L § 1(a).

44.     Any dispute regarding the floor slabs of the Buildings or subgrade construction in respect of the Building is a dispute about Open Items because the dispute relates to whether Substantial Completion has been achieved.  Because the parties cannot agree whether certain Open Items are resolved, whether certain items are indeed Open Items, or as to the interpretation of provisions with respect to the Open Items, the parties must submit to arbitration pursuant to Section 9.8 of the Purchase Agreement and Section 1(a) of Exhibit L to the Purchase Agreement.

45.     Before filing this Petition, Seller provider Purchaser with notice initiating arbitration under the Purchase Agreement in accordance with the parties' arbitration agreement. *See* Ex. 2, Notice.

46.     By reason of the foregoing, the court should issue an order compelling arbitration of the disputes between the parties in accordance with the terms of the Purchase Agreement between the parties.

**WHEREFORE**, Magnolia respectfully requests that this Court issue an order compelling Purchaser to arbitrate all disputes against Magnolia pursuant to 9 U.S.C. § 4 and 9 U.S.C. § 206 enforcing the arbitration agreement entered into by the parties.

Dated: January 6, 2023

Respectfully submitted,

BAKER BOTTS, L.L.P.

*/s/ William Kroger*
William Kroger (*Pro Hac Vice* Forthcoming)
State Bar No. 11729900
Lindsay L. Buchanan
State Bar No. 24105551
Dominic Cruciani
State Bar No. 24116238
910 Louisiana
Houston, Texas 77002
Telephone:  (713) 229-1736
Facsimile:  (713) 229-2836
bill.kroger@bakerbotts.com
lindsay.buchanan@bakerbotts.com
dominic.cruciani@bakerbotts.com

John Lawrence
State Bar No. 24055825
2001 Ross Avenue, Suite 900
Dallas, Texas 75201-2980
Telephone:  (214) 953-6500
Facsimile:  (214) 953-6503

ATTORNEYS FOR MAGNOLIA PADS, LTD.